**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 19-145-DLB-CJS**

**NOVOLEX HOLDINGS, LLC, et al.**                                      **PLAINTIFFS**

**v.**                                **MEMORANDUM OPINION AND ORDER**

**JOHN WURZBURGER**                                               **DEFENDANT**

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

## I.      INTRODUCTION

This matter is before the Court on Defendant John Wurzburger's Motion to Strike and partial Motion to Dismiss.  (Docs. # 39 and 40).  Defendant's Motions have been fully briefed, (Docs. # 41, 42, 44 and 45), and are now ripe for the Court's review.  Plaintiffs have further requested Leave to File a Surresponse in Opposition to Defendant's Motion to Dismiss.  (Doc. # 48).  For the reasons set forth herein, Defendant's Motion to Strike (Doc. # 39) is **granted in part and denied in part**, Motion to Dismiss (Doc. # 40) is **granted in part and denied in part**, and Plaintiffs' Motion for Leave to File surresponses (Doc. # 48) is **granted**.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On October 16, 2019, Novolex Holdings, LLC ("Novolex"), the Waddington Group, Inc. ("TWG"), and WNA ("WNA"), Inc., filed a Complaint seeking damages and declaratory relief.  (Doc. # 1).  On December 3, 2019, Defendant John Wurzburger ("Wurzburger"), filed a Motion to Dismiss, (Doc. # 12), which the Court ultimately granted in part and denied in part.  (Doc. # 19).  The Court granted dismissal on a number of Plaintiffs' claims,

including Plaintiffs' original claims for conversion, negligent misrepresentation, and fraudulent misrepresentation. (*Id.* at 29). Following the Court's Memorandum Opinion & Order, Plaintiffs filed a Second Amended Complaint on March 9, 2021. (Doc. # 36). Thereafter, on April 30, 2021, Defendant Wurzburger filed a partial Motion to Dismiss (Doc. # 40), requesting that the Court dismiss a number of the claims included in Plaintiffs' Second Amended Complaint: conversion, negligent misrepresentation, and fraudulent misrepresentation.

On June 29, 2018, Novolex engaged in a multi-billion-dollar transaction ("the Transaction") to purchase TWG and WNA from their parent company, Newell Brands, Inc. (Doc. # 36 at 1-2). As part of the Transaction, Novolex assumed oversight over the Special Incentive Plan ("SIP"), which compensated TWG's management for achieving certain financial performance targets. (*Id.* ¶¶ 10-12). Under the SIP, Wurzburger was to receive six million dollars if he were employed by Novolex on December 31, 2018, and otherwise fulfilled his obligations under the SIP, which included complying with his employment agreement. (*Id.* ¶ 20); (*see also* Doc. # 24-3 at 7).

The counts subject to Wurzburger's Motion to Dismiss, all allegedly occurred following the closing of the Transaction. During the post-closing period, Wurzburger allegedly made false statements to Novolex "regarding the condition of TWG and its subsidiary WNA." (*Id.* ¶ 115). After TWG lost a Material Customer, Novolex implemented a recovery plan ("the TWG Recovery Plan"). (*Id.* ¶ 37). Plaintiffs allege a number of instances where Wurzburger failed to inform Novolex of the status of the TWG Recovery Plan:

- Wurzburger discovered a miscalculation in calculating the revenue loss from the loss of the Material Customer, but delayed reporting this to Novolex. (*Id.* ¶ 38).

- Wurzburger misrepresented the status of $2.5 million in idle inventory meant for the Material Customer who no longer was serviced by TWG. (*Id.* ¶ 39). While Wurzburger told Novolex this inventory was still useable, he told others internally that the inventory was "stranded." (*Id.*).

- Wurzburger failed to report a dispute with a customer regarding the delivery of coffee lids. (*Id.* ¶ 42). In February 2019, Novolex was informed of this dispute through a litigation demand letter, which alleged WNA's failed to meet its contractual obligations regarding the delivery of the coffee lids. (*Id.* ¶ 44).

- Wurzburger withheld information regarding a customer who started producing packing materials in-house, "which impacted 2019 budget estimates by several million dollars." (*Id.* ¶¶ 46-47).

After these events, on December 14, 2018, Novolex terminated Wurzburger. (*Id.* ¶ 53). Following his termination, Plaintiffs allege that Wurzburger converted Novolex's proprietary and confidential information for his own personal use. (*Id.* ¶ 99). Wurzburger allegedly shared this information with third parties, failing to maintain the information's confidential nature. (*Id.* ¶ 71). After sharing this information, Wurzburger allegedly only agreed to return it if Novolex agreed to mediation. (*Id.* ¶ 99).

## III.   ANALYSIS

### A.   Motion to Strike

#### 1.   *Standard of Review*

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or *any redundant, immaterial, impertinent, or scandalous matter*." (emphasis added). Courts have considerable discretion in determining whether to strike portions of a complaint. *Thompson v. Hartford Life and Acc. Ins. Co.*, 270 F.R.D. 277, 279 (W.D. Ky. 2010). Here, Defendant's Motion to Strike largely pertains to "scandalous"

and "immaterial" allegations made in the Second Amended Complaint.  (Doc. # 39 at 1).

Motions to strike "are disfavored and should be denied unless the challenged allegations

have no possible relation or logical connection to the subject matter of the controversy

and may cause some form of significant prejudice to one or more of the parties in the

action."  *Mosier v. Kentucky*, No. 08-184, 2008 WL 4191510, at *1 (E.D. Ky. Sept. 11,

2008).  Generally, motions to strike should function to "avoid the expenditure of time and

money that must arise from litigating spurious issues by dispensing with them early in the

case."  *Operating Eng'rs Local 324 Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045,

1050 (6th Cir. 2015) (internal quotations and citations omitted).

### 2.      *Allegations in Plaintiffs' Second Amended Complaint*

Defendant Wurzburger moves the Court to strike certain allegations made by

Plaintiffs in their Second Amended Complaint.  (Doc. # 39).  These allegations are broken

into two subsections: those that are "immaterial" and those that are both "immaterial" and

"scandalous."  (Doc. # 39 at 1).

The Court will be begin by evaluating the so-called "immaterial" allegations.[1]  Each

of these allegations revolve around Wurzburger's alleged deceitful conduct with regard to

the Transaction and the loss of the Material Customer.  While it is true that this Court has

dismissed Plaintiffs' pre-closing claims, (*see* Doc. # 19 at 16-17), the supposedly

"immaterial" allegations have the necessary "logical connection to the subject matter of

the controversy."  *Mosier*, 2008 WL 4191510, at *1.  As stated in the Court's previous

opinion, "Wurzburger is shielded from liability for representations or omissions made

---

[1]      Defendant states that the "immaterial" allegations are located as follows in the Second
Amended Complaint: (1) the second paragraph of the "Introductory Statement," (2) the section
titled "Professional Activity Prior to the Closing of the Novolex Transaction," (3) paragraphs 22
through 34, (4) paragraph 43, and (5) paragraph 47.

about the Material Customer prior to the closing of the Transaction."  (Doc. # 19 at 16-17).  But these supposedly immaterial allegations discuss Wurzburger's actions prior to and after the closing.  For example, although the loss of the Material Customer occurred prior to the closing of the transaction, Plaintiffs allege that Defendant did not inform them of this loss until *after the closing*.  (Doc. # 36 ¶ 33-34).  The pre-closing allegations provide necessary contextual background for the Court to understand the timeline related to the loss of the Material Customer and Defendant's ultimate disclosure of this loss.  Plaintiffs allege a breach of contract claim based on their employment agreement with Wurzburger, (Doc. # 36 ¶ 72-89), and while Wurzburger is shielded from liability for his actions prior to closing, he is not shielded from liability for later actions that may have been a breach of that agreement.  Because of this, none of these allegations are so immaterial or so prejudicial as to warrant them being struck from the pleadings.  Therefore, so far as Defendant requests the striking of so-called "immaterial" allegations from the Second Amended Complaint, that request is **denied**.

Next, Defendant asserts that a number of allegations are both "immaterial" and "scandalous."[2]  These allegations largely concern Wurzburger's actions in his personal life, including allegations that Wurzburger participated in extra-marital relationships and a secret gambling ring.  (Doc. # 36 ¶¶ 57-69, 80, 112).  Plaintiffs allege that these extracurricular activities motivated his pre-occupation with his SIP Payout and highlight his deceptive nature and dishonesty.  (*Id.* ¶ 57-59).  Defendant argues that these allegations are unrelated to Plaintiffs' underlying claims and "cast an unfair derogatory

---

[2]     Defendant states that the "immaterial" and "scandalous" allegations are located as follows in the Second Amended Complaint: (1) third paragraph of "Introductory Statement," (2) paragraphs 57 through 69, (3) paragraph 80, and (4) paragraph 112.

light on Wurzburger." (Doc. # 39 at 3-4). Plaintiffs allege that these bad acts by Defendant occurred before the closing and "upon information and belief, after the Closing." (Doc. # 36 ¶ 57). However, all the factual allegations included in the Second Amended Complaint only reference text messages with bookies and extra-marital partners that are dated prior to the Closing. (*See id.* ¶¶ 57-69, 80, 112). In fact, most of these text messages are from 2016 and 2017, well before the Transaction between Novolex and TWG, which closed in June of 2018. (*Id.*).

Not only is the temporal connection between Wurzburger's alleged dishonest acts weak, but the relevance of his personal actions to this lawsuit is also questionable. Plaintiffs attempt to forge that connection by alleging that these actions created a conflict of interest which put Wurzburger "in the position of having to serve multiple masters, to Novolex and WNA's detriment and in violation of his employment agreement" and "in violation of his duty of loyalty." (*Id.* ¶ 80). It seems these personal actions are used to bolster Plaintiffs' breach of contract and breach of fiduciary duty claims. But, the fact of the matter remains that none of the allegations regarding Wurzburger's personal life occurred following Plaintiffs' purchase of TWG and WNA. Because these actions all occurred prior to the Closing, it also means they occurred prior to Wurzburger being bound by an employment contract or a duty of loyalty with Plaintiffs. Stating that Wurzburger has continued these actions "based on information and belief" is simply insufficient. Therefore, these allegations "are unnecessary to the assertions in the [c]omplaint, neither setting forth an element of a claim made, nor providing the needed factual predicate for one." *Schlosser v. Univ. of Tenn.*, No. 3:12-CV-534, 2014 WL

5325350, at *3 (E.D. Tenn. Oct. 20, 2014) (quoting *McKinney v. Bayer Corp.*, No. 10-CV-224, 2010 WL 2756915, at *2 (N.D. Ohio July 12, 2010) (alteration in original)).

While these allegations are likely immaterial because they lack a logical connection to the underlying claims, they also have the potential to cause prejudice against Wurzburger. The Second Amended Complaint clearly casts Wurzburger's personal life in a negative light and "moves from the type of negative assertions that arise in any civil complaint into deeper waters of undue and unfair prejudice." *Schlosser*, 2014 WL 5325350, at *4. Further, striking these types of allegations is appropriate when "a complaint contains 'numerous immaterial, impertinent, or scandalous statements designed to improperly illicit sympathy, to curry favor, or to cast aspersions on the defendants.'" *Despain v. Louisville Metro Gov't*, No. 3:14-CV-P602, 2021 WL 3699386, at *1 (W.D. Ky. Aug. 19, 2021) (quoting *Everage v. Ford Motor Co.*, No. 04-CV-549, 2005 WL 1176095, at *3 (E.D. Ky. May 12, 2005), report and recommendation adopted, No. 04-CV-549, 2005 WL 2365267 (E.D. Ky. Sept. 14, 2005)). The Court finds that these allegations could cause significant prejudice to Wurzburger and function to cast aspersions in relation to Wurzburger's character.

Therefore, because the allegations lack materiality and carry a great potential for prejudice, Defendant's Motion to Strike the following portions of Plaintiffs' Second Amended Complaint is **granted**: (1) third paragraph of "Introductory Statement," (2) paragraphs 57 through 69, (3) paragraph 80, and (4) paragraph 112.

### B.   Motion to Dismiss

#### 1.   *Standard of Review*

Granting a motion to dismiss is appropriate if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Further, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   In order to have "facial plausibility," the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Id.) (quoting Twombly, 550 U.S. at 556). In evaluating a motion to dismiss, a court should "construe the complaint in the light most favorable to the plaintiff" and "accept all wellpleaded factual allegations as true." Hill v. Snyder, 878 F.3d 193, 203 (6th Cir. 2017) (citing Ashcroft, 556 U.S. at 678; Twombly, 550 U.S. at 570). However, "mere conclusory statements, do not suffice" and legal conclusions "must be supported by factual allegations." Ashcroft, 556 U.S. at 678-79. Generally, a determination at the motion to dismiss stage "is purely a matter of law." Benningfield v. Pettit Environ., Inc., 183 S.W.3d 567, 570 (Ky. Ct. App. 2005) (quoting James v. Wilson, 95 S.W.3d 875, 884 (Ky. Ct. App. 2002)).

#### 2.   *Plaintiffs' Conversion Claim*

Plaintiffs allege that Wurzburger took proprietary and confidential information belonging to TWG, shared the information with his attorneys, and used the return of this information as a bargaining chip to force Novolex to enter mediation discussions.   (Doc. # 36 ¶¶ 98-103).   Wurzburger argues that this claim must fail because Plaintiffs did not allege a required element of the claim of conversion in Kentucky—that Wurzburger

exercised dominion over the confidential information in a manner that denied Plaintiffs the right to use and enjoy the information.   (Doc. # 40 at 14).   Plaintiffs instead argue that their claim is focused on Plaintiffs' right to exercise "dominion and control over the information by keeping it confidential."   (Doc. # 41 at 6).

To make out a conversion claim in Kentucky, Plaintiff must show:

(1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Jasper v. Blair*, 492 S.W.3d 579, 582 (Ky. Ct. App. 2016) (quoting *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014)).

While Plaintiff's argument may be persuasive in other jurisdictions,[3] the plain text of the elements of conversion in Kentucky require that plaintiff's rights to use and enjoy the property must be denied.   *Id.*   "[T]he tort of conversion requires an unauthorized taking or dispossession *to the complete exclusion* of the rightful possessor, not a mere temporary interference with property rights."   *Comm. Ties of Am., Inc. v. NDT Care Servs., LLC*, No. 3:12-CV-429, 2015 WL 520960, at *19 (W.D. Ky. Feb. 9, 2015) (citations omitted) (emphasis in original).   But Plaintiffs knew this was the case.   Following

---

[3]      While some states have expanded common law conversion to cover temporary interferences in property rights, "the Court finds no law indicating that Kentucky is one of them." *Comm. Ties of Am., Inc. v. NDT Care Servs., LLC*, No. 3:12-CV-429, 2015 WL 520960, at *19 (W.D. Ky. Feb. 9, 2015).  As explained persuasively in *Community Ties*, the tort of conversion in Kentucky "arose from two common law writs that specifically contemplated a defendant's *exclusive possession* of the property in question: 'trover' and 'trespass.'"  (*Id.* at *20) (citing *Motors Ins. Corp. v. Singleton*, 677 S.W.2d 309, 314 (Ky. Ct. App. 1984)).

Defendant's first Motion to Dismiss (Doc. # 12), this Court determined that Plaintiffs had failed to adequately plead a claim for conversion for this very reason—"at no point do the Plaintiff's allege that Wurzburger's alleged taking and keeping of the confidential information 'denied the plaintiffs right to use and enjoy the property' or that 'the defendant intended to interfere with the plaintiff's possession.'"  (Doc. # 19 at 18) (quoting *Jones*, 454 S.W.3d at 853)).  The Court went on to state that "nothing in the Complaint suggests that Wurzburger's alleged taking and failure to return the confidential information precluded Novolex from having access to that same information—a key element of a conversion claim."  (*Id.*).

Plaintiffs add no new material information to their Second Amended Complaint that supports this essential element of a conversion claim.  Thus, Plaintiffs' claim of conversion is **dismissed.**

### 3.    *Plaintiffs' Negligent/Fraudulent Misrepresentation Claims*

Plaintiffs further allege several instances where Wurzburger misrepresented the financial state of TWG to Novolex and its representatives.  (Doc. # 36 ¶¶ 37-50, 114-126).  Wurzburger argues that Plaintiffs' misrepresentation claims are insufficient because Plaintiffs fail to "include the requisite 'who, what when, where, and why' details" necessary to support a misrepresentation claim.  (Doc. # 45 at 3-4).  Because of the nature of misrepresentation claims, both claims "are subject to Rule 9(b)'s heightened pleading standards."  *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 562 (6th Cir. 2013).  This heightened standard requires a plaintiff attempting to establish fraud or negligent misrepresentation: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to

explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247-48 (6th Cir. 2012).

> A misrepresentation claim requires a plaintiff to prove:
>
> (1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff.

*Morris Aviation*, 536 F. App'x at 562. Importantly, the misrepresentation "must relate to a past or present material fact" and "cannot be premised on either future predictions *or* generalized, subjective opinions . . ." *Id.* at 562-63. However, when dealing with misrepresentations by omission, the pleading standard does not require the exact "time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 651 (W.D. Ky. 2019). Importantly, these considerations "should not be read to defeat the general policy of 'simplicity and flexibility' in pleadings contemplated by the Federal Rules." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 D.3d 496, 503 (6th Cir. 2008). Ultimately, a complaint must "provide fair notice to Defendant[] and enable [him] to 'prepare an informed pleading responsive to the specific allegations of fraud.'" *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (quoting *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999)).

In the Second Amended Complaint, Plaintiffs added details that were very much lacking in the first Complaint dismissed by this Court. (Doc. # 36). Plaintiffs alleged that Wurzburger made the following negligent and fraudulent misrepresentations or omissions following the closing of the Transaction, which are described in further detail above, *supra*

II: (1) delaying a report of a miscalculation in revenue loss, (2) misrepresenting the status of inventory meant for the Material Customer after loss of the Material Customer's business, (3) failing to report a dispute regarding delivery and production of coffee lids, and (4) withholding information about a customer who transitioned away from TWG to start producing packing materials in-house.  (*Id.* ¶¶ 38-39, 42-44, 46-47).

Three of Wurzburger's alleged failures fall into the category of omissions: (1) delaying the reporting of a miscalculation in revenue loss, (2) failing to report a dispute, and (3) withholding information about a customer.  (*Id.* ¶¶ 38, 42-44, 46-47).  These allegations are sufficient to put Wurzburger on notice of the alleged omissions he made to Novolex.  Where a plaintiff pleads misrepresentation by omission, courts cannot expect plaintiffs to "plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act."  *B.L.*, 380 F. Supp. 3d at 652.  But, a plaintiff should be able to "provide a framework for relevant discovery and alert [the defendant] 'as to the particulars of their alleged misconduct.'"  *Id.* (quoting *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011)).   Here, Plaintiffs assert generally that Wurzburger deceived management "by representing inconsistent, incorrect, and tardy information . . . regarding TWG/WNA customer relations, TWG/WNA operations . . . and internal finances relating to, among other things, inventory and customer loss."  (Doc. # 36 ¶ 17).  The Complaint then proceeds to detail three separate omissions.

First, Plaintiffs allege that in September 2019, Wurzburger discovered a miscalculation regarding the decrease in revenue due to the loss of the Material Customer.  Wurzburger then delayed in reporting this miscalculation, which Plaintiffs allege "required Novolex management to assign additional resources to Wurzburger's

group to attempt to close this information gap." (*Id.* at ¶ 39). At the very least, this allegation asserts a negligent failure by Wurzburger to communicate pertinent information regarding TWG's revenue stream and resulted in injury to Plaintiffs due to the assignment of additional resources in Wurzburger's group. While the specificity of this allegation could undoubtedly be improved, the Court concludes the details included give Wurzburger the ability to prepare an informed response to the allegation. *See U.S. ex rel. Bledsoe*, 501 F.3d at 504.

Second, Plaintiffs allege that Wurzburger failed to notify Novolex management about a dispute that eventually led to litigation. (Doc. # 36 ¶¶ 42, 44). Plaintiffs provide a number of operative facts with respect to this allegation: (1) there was a dispute with a customer regarding the shipment and manufacture of coffee lids, (2) Wurzburger failed to mention this dispute to Novolex, (3) Novolex was informed of the dispute through its receipt of a litigation demand letter in February 2019, and (4) as a result of Wurzburger's omission, the customer was lost and the matter proceeded to litigation. (*Id.* ¶¶ 42-45). This allegation provides the time frame, the alleged misrepresentation by omission, why the omission was material, and how it negatively impacted Novolex. Thus, the allegation clearly meets the basic standard to put Wurzburger on notice of his allegedly illegal conduct and likewise provides a framework to guide discovery in this case. *See U.S. ex rel. Bledsoe*, 501 F.3d at 504.

Third, Plaintiffs alleged that Wurzburger withheld information about a customer who decided to move their packing production in house. (Doc. # 36 ¶ 46). Plaintiffs state that Wurzburger knew about the potential loss, and when he was asked directly about it by a Novolex senior executive in July of 2018, Wurzburger failed to disclose the potential

loss.  (*Id.* ¶ 47).  Wurzburger's (in)actions allegedly impacted TWG's 2019 budget by "several million dollars."  (*Id.*).  Again, the operative facts provided by Plaintiffs are sufficient to allow Wurzburger to respond to this allegation and to guide the discovery process.  *See U.S. ex rel. Bledsoe*, 501 F.3d at 504.

Next, Plaintiffs allege a fraudulent statement instead of an omission: that Wurzburger misrepresented the status of $2.5 million in "idle inventory."  (Doc. # 36 ¶ 39). Plaintiffs specifically allege that following the loss of the Material Customer, Wurzburger misrepresented the status of inventory, telling Novolex management that this inventory was usable while simultaneously telling team members that the inventory was "stranded." (*Id.*).  This specific instance of negligent/fraudulent misrepresentation does not meet the specificity required of these causes of action because Plaintiffs fail to allege why this statement was fraudulent or the impact it ultimately had on TWG's operations.

Therefore, Plaintiffs' allegations that Wurzburger negligently/fraudulently omitted relevant information as to TWG's operations may proceed, but their allegation regarding the negligent/fraudulent statement relating to inventory is **dismissed**.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    Plaintiffs' Motion for Leave to File surresponses (Doc. # 48) is **granted**.

(2)    Defendant's Motion to Strike (Doc. # 39) is **granted in part** and **denied in part**.  Specifically:

(a)    Defendant's Motion is **denied** in so far as it requests the Court to strike from the Second Amended Complaint: the second paragraph of the "Introductory Statement," the section titled "Professional Activity Prior to the

Closing of the Novolex Transaction," paragraphs 22 through 34, paragraph 43, and paragraph 47; and

(b)    Defendant's Motion is **granted** in so far as it requests the Court to strike from the Second Amended Complaint: the third paragraph of "Introductory Statement," paragraphs 57 through 69, paragraph 80, and paragraph 112.   **Plaintiffs are directed to file an Amended Second Amended Complaint consistent with this Order within ten (10) days**;

(3)    Defendant's Motion to Dismiss (Doc. # 40) is **granted in part** and **denied in part**.  Specifically:

(a)    Plaintiffs' conversion claim is **dismissed**;

(b)    Plaintiffs' negligent/fraudulent misrepresentation claim is **dismissed** only as to Wurzburger's allegedly negligent/fraudulent statement relating to inventory; and

(c)    Plaintiffs' negligent/fraudulent omissions claim may proceed to discovery.

(4)    Defendant Wurzburger is **ordered to file a responsive pleading**, in the form of an Answer, to the remaining portions of Plaintiffs' Second Amended Complaint (Doc. # 36) **within twenty-one (21) days** of the filing of the Amended Second Amended Complaint as set forth in ¶ 2(b) of this Order.

(5)    Upon the filing of the Answer, and pursuant to Rules 16 and 26 of the Federal Rules of Civil Procedure, the parties shall:

(a)    Within twenty-one (21) days of the answers being filed, meet either in person or by telephone, to discuss the nature and basis of their claims

15

and defenses, and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures requires by Rule 26(a)(1) of the Federal Rules of Civil Procedure, and to develop a proposed discovery plan.  *See* Fed. R. Civ. P. 26(f).

(b)      Within ten (10) days after the meeting, the parties shall file a joint status report containing:

(i)      the proposed discovery plan;

(ii)      the parties' estimate of the time necessary to file pretrial motions;

(iii)      the parties' belief as to whether the matter is suitable for some form of alternative dispute resolution such as mediation;

(iv)      the parties' estimate as to the probable length of trial; and

(v)      whether the parties will consent to the jurisdiction of a Magistrate Judge (Smith) for all further proceedings, including trial, pursuant to 28 U.S.C. § 636(c).  Consent forms are attached to this Order and forms signed by all parties' counsel should be filed no later than the date counsels' joint status report is due.  If all parties, by counsel, so consent, the Clerk of Court shall reassign this matter to the appropriate Magistrate Judge without the necessity of further order of the Court.  L.R. 73.1(c).

(c)      Should the parties find that a joint report is not possible, the parties shall each file individual reports, which the Court shall entertain for purposes of setting out its Scheduling Order or other appropriate orders.

This 8th day of February, 2022.



**Signed By:**

**_David L. Bunning_**

**United States District Judge**

O:\DATA\ORDERS\Cov2019\19-145 MOO.docx